### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE:  PATRICK LEE OLSON | : | CHAPTER 7 |
|  | : |  |
| Debtor | : | No. 22-11556-mdc |
|  | : |  |
|  | : |  |
| MICHAEL WILEY, successor by assignment to MCGRATH TECHNICAL STAFFING, INC. d/b/a MCGRATH SYSTEMS | : | |
|  | : |  |
| Plaintiff, | : | ADVERSARY ACTION |
| v. | : |  |
|  | : | NO. _____ |
| PATRICK LEE OLSON | : |  |
| Defendant. | : |  |
|  | : |  |

### COMPLAINT OBJECTING TO DISCHARGE
### PURSUANT TO 11 U.S.C. §§ 523 (a)(2) and (4)

Michael Wiley, by and through his attorneys, Berger Law Group, P.C., hereby files this Complaint Objecting to Discharge Pursuant to 11 U.S.C. §§ 523 (a)(2) and (a)(4), and avers as follows:

1.     Plaintiff/Creditor Michael Wiley ("Wiley"), successor by assignment to McGrath Technical Staffing Inc. d/b/a McGrath Systems ("McGrath"), is an adult individual with an address at 1787 Sentry Parkway West, Blue Bell, PA 19422 .

2.     Debtor/Defendant Patrick Lee Olson ("Debtor" or "Defendant" or "Mr. Olson") is the debtor in this bankruptcy case and is an adult with a last known residence at 101 Blossom Way, Pottstown, PA 19465.

3.     This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

4.      This is a core proceeding in Debtor's bankruptcy case pursuant to 28 U.S.C. § 157 (b)(2)(1) and 157(b)(2)(J).

5.      This matter constitutes an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

## FACTS

6.      On June 15, 2022, the Debtor filed a voluntary petition with this Court under Chapter 7 of the Bankruptcy Code.

7.      By way of background, this matter relates to a judgment entered on November 19, 2018 in the Montgomery County Court of Common Pleas at Docket No. 2018-22559 in favor of McGrath and against Mr. Olson in the amount of $3,678,122.58 (the "Judgment").

8.      The Judgment was subsequently transferred to the Chester County Court of Common Pleas at Docket No. 2019-06782-JD and assigned to Plaintiff Wiley.  A true and correct copy of the Judgment entered in the Chester County Court of Common Pleas is attached hereto as Exhibit "1".

9.      The Judgment is the result of a fraud perpetrator by the Defendant against McGrath and its principal Plaintiff Wiley.

10.     In or about 2017, the Debtor approached Mr. Wiley about a project that the two could work on together with a company called CSS from Virginia.

11.     The Debtor was to handle the technical side of the project, while Mr. Wiley was to arrange the funding for the project.

12.     The Debtor informed Mr. Wiley that the project was going to require

approximately $2.5 million to $3.0 million in funding, of which the Debtor requested

that Mr. Wiley supply one-half of these funds.

13.     Mr. Wiley reviewed the information regarding the project provided by

the Debtor and approached his bank about the funding.

14.     After Mr. Wiley's bank reviewed the project information, the Bank

requested the assignment of the contract with CSS as collateral for the loan.

15.     The Debtor provided what appeared to be a fully executed contract

with CSS (the "Contract"), which Contract appeared to be signed by CSS's chief

operating officer ("CSS's COO").

16.     However, unbeknownst to the Plaintiff or to the Bank, CSS's COO had

left CSS earlier in the year, and the COO had not actually signed the Contract.

17.     In  fact, upon information and belief, it was the Debtor who forged the

COO's signature on the Contract.

18.     Having no reason to doubt the authenticity of the Contract, Mr. Wiley

presented the Contract to the Bank as collateral for the loan, and the Bank then

approved the loan and began to fund the project in increments.

19.     Despite the fact that the project was fully funded, the project failed to

close in 2017.

20.     At this time, the Debtor  began providing numerous excuses and

stories to Plaintiff Wiley as to why the project was not closing.

21.     Then, when the project did not close in the beginning of 2018, Plaintiff

Wiley requested that the Debtor either pay back monies forwarded by Mr. Wiley or

his Bank (for which Mr. Wiley was personally liable) or provide a promissory note to

Mr. Wiley.

22.     The Debtor, by and through his entity Idea IT Solutions LLC ("Idea

IT") then provided McGrath a promissory note in the amount of $1,261,000.00 (the

"Loan") dated April 6, 2018 (the "Note"), which Loan was unconditionally

guaranteed by Debtor Olson (the "Guaranty"). A true and correct copy of the Note,

which includes the Guaranty, is attached hereto as Exhibit "2".

23.     The Note required that the Debtor repay the Loan via payments of

$40,000.00 per month until the project closed.

24.     While the Debtor made one payment, the Debtor made no further

payments then due.

25.     It was at this time that it became apparent that the whole project was

bogus, and that the Debtor had stolen the money from the Plaintiff.

26.     Plaintiff Wiley had provided the Debtor with over $1.2 million, which

monies were supposed to be used by the Debtor to fund a real project.

27.     Instead, the Debtor took this money for his own personal use.

28.     Upon information and belief, the Debtor lost almost all of the $1.2

million provided by Plaintiff Wiley while gambling at Valley Forge Casino.

29.     After the Debtor's fraud became apparent, Plaintiff Wiley contacted

the Whitpain Police, who began an investigation of the Debtor's fraudulent and

illegal actions.

30.     In September 2019, the Debtor was charged with forgery and was

eventually found guilty and sentenced to 14 days in jail, as well as restitution in the amount $1.2 million, which restitution was to be paid to Plaintiff Wiley.

31.    The restitution required monthly payments of $12,000.00 a month; however, no such payments have ever been made by the Debtor (the Debtor made only one partial payment in the amount of $50.00 to Plaintiff Wiley in restitution).

32.    Plaintiff Wiley has been harmed by the Debtor's illegal and fraudulent acts, which acts are criminal.

33.    The Judgment is a result of the Debtor's fraudulent and illegal acts.

34.    The Debtor cannot simply discharge such obligations, which obligations were the result of the Debtor's fraud and illegal conduct.

35.    Therefore, Creditor Wiley seeks the denial of the Debtor's discharge.

## COUNT I
## OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. 523(a)(2)

36.    Plaintiff Wiley incorporates the foregoing paragraphs as if set forth at length herein.

37.    Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), excepts from discharge debts arising from three (3) similar, but distinct, types of misconduct: (1) false pretenses; (2) a false representation and (3) actual fraud. See e.g., *In re Ricker*, 475 B.R. 445, 456 (Bankr. E.D. Pa. 2012).

38.    The three (3) different types of conduct that give rise to nondischargeability under §523(a)(2) all require that a plaintiff prove false or deceptive conduct, fraudulent intent, and justifiable reliance. See *In re Altieri*, 2012 Bankr. LEXIS 3843, 2012 WL 3595298, at *2 (Bankr. D.N.J. Aug. 20, 2012).

39.    Thus, "[t]o be actionable under § 523(a)(2)(A), the debtor must act with scienter, regardless of whether the creditor alleges that the debtor's conduct constituted false pretense, a false representation or actual fraud." *Am. Fed. of State v. Marshall (In re Marshall)*, 623 B.R. 123, 133 (Bankr. E.D. Pa. 2020).

40.    Pennsylvania bankruptcy courts have held that "actual fraud" under §523(a)(2)(A) includes "anything that counts as 'fraud' and is done with wrongful intent." *Am. Fed. of State v. Marshall (In re Marshall)*, 623 B.R. 123, 134 (Bankr. E.D. Pa. 2020)

41.    Accordingly, to establish that a debt is nondischargeable under the "actual fraud" prong of § 523(a)(2)(A), a creditor must prove that (1) the debtor engaged in actual fraud (i.e., any fraud that involved moral turpitude or constituted an intentional wrong); (2) the debtor obtained money, property, services or credit by engaging in actual fraud; and (3) the debt arose from the actual fraud. *In re Kaplan*, 608 B.R. 443, 450 (Bankr. E.D. Pa. 2019) (quoting *In re Sheaffer*, 2017 Bankr. LEXIS 218, 2017 WL 377941, at *4 (Bankr. M.D. Pa. Jan. 25, 2017)).

42.    In other words, "a creditor must prove that a debtor took some action in furtherance of his wrongful intent, that the fraudulent action enabled him to obtain money, property, services or credit, and that the debt arose in the context of the fraudulent scheme." *Sheaffer*, 2017 Bankr. LEXIS 218, 2017 WL 377941, at *4.

43.    In this matter, there is no question that the Debtor stole over $1.2 million from Mr. Wiley via a fraudulent and illegal scheme involving forgery, outright lies, and false representations, intending Mr. Wiley to rely on said

misrepresentations to his detriment.

44.    Through his fraudulent and illegal actions, the Debtor stole over $1.2 million from Plaintiff Wiley.

45.    There can be no doubt that the Debtor's actions constitute actual fraud and were an intentional wrong that involved the kind and degree of moral turpitude required by §523(a)(2)(A). *Am. Fed. of State v. Marshall (In re Marshall)*, 623 B.R. 123, 139 (Bankr. E.D. Pa. 2020).

46.    Accordingly, the Judgment should be excepted from the Debtor's discharge (if applicable) pursuant to §523(a)(2)(A).

WHEREFORE, Plaintiff Michael Wiley respectfully requests an Order denying Debtor a discharge, together with such other relief as the Court deems necessary and appropriate.

## COUNT II
## OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. 523(a)(4)

47.    Plaintiff Wiley incorporates the foregoing paragraphs as if set forth at length herein.

48.    Section 523(a)(4) provides for an exception to discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4).

49.    Accordingly, this subsection of §523 establishes three (3) distinct types of nondischargeable debt.

50.    The first type of nondischargeable debt is found in the "fiduciary prong," which requires the creditor to establish that the debtor (1) was in a

fiduciary relationship with the creditor, and (2) committed fraud or defalcation within the scope of that fiduciary relationship. See, e.g., *Roemmele*, 2011 Bankr. LEXIS 3953, 2011 WL 4804833, at *4.

51.    The second and third types of nondischargeable debt in §523(a)(4) do not require proof of an existing fiduciary relationship, but rather, proof that the debtor committed embezzlement or larceny, as those terms are defined by federal common law. 2011 Bankr. LEXIS 3953, [WL] at *5; *In re Burke*, 416 B.R. 136, 145 (Bankr. E.D. Pa. 2009).

52.    In this matter, the Debtor has violated all three (3) types of nondischargeable debts.

53.    Specifically, as Plaintiff Wiley's business partner, the Debtor was clearly in a fiduciary relationship with Plaintiff Wiley.

54.    Mr. Wiley provided significant sums to the Debtor so that the alleged project could be completed.

55.    The Debtor owed Mr. Wiley a fiduciary duty of care; however, the Debtor violated this duty by stealing the monies and lying even about the existence of the project.

56.    Moreover, the Debtor further violated his fiduciary duties to the Plaintiff by forging the various documents related to the alleged project.

57.    Accordingly, the Judgment should be deemed nondischargeable under the fiduciary prong of §523(a)(4).

58.    Additionally, the Judgment meets the requirements of the second two

prongs, as the debt arose from embezzlement and/or larceny.

59.    Embezzlement and larceny are similar concepts under §523(a)(4) with

one fundamental difference. *Am. Fed. of State v. Marshall (In re Marshall)*, 623 B.R.

123, 139 (Bankr. E.D. Pa. 2020).

60.    Both embezzlement and larceny involve the debtor's fraudulent

misappropriation of property but are distinguished by evaluating the status of the

property when it came into the debtor's possession. *Id.*

61.    Embezzlement occurs when the debtor initially controlled or acquired

the property lawfully and then subsequently misappropriated the property; larceny

occurs when the debtor initially takes possession or control of the property

unlawfully with the requisite improper intent. *Id.* citing *Roemmele*, 2011 Bankr.

LEXIS 3953, 2011 WL 4804833, at *6; *Burke*, 416 B.R. at 145.

62.    To prove embezzlement the plaintiff must show: "(1) the debtor was

entrusted; (2) with property; (3) of another; (4) which the debtor misappropriated for

his own use; and (5) with fraudulent intent." *Bell*, 498 B.R. at 477; *Roemmele*, 2011

Bankr. LEXIS 3953, 2011 WL 4804833, at *15.

63.    Fraudulent intent also may be inferred from a course of conduct such

as a "pattern of concealment and nondisclosure." *Bell*, 498 B.R. at 483 (citing *Cadle

Co. v. Zofko*, 380 B.R. 375, 383 (W.D. Pa. 2007).

64.    A finding of larceny requires proof that the debtor committed larceny

as defined under federal common law -- "the unlawful taking and carrying away of

someone else's property with the intent to deprive the possessor of it permanently."

*In re Esola*, 606 B.R. 647, 652 (Bankr. E.D. Pa. 2019); *In re Kaltenbock*, 2013 Bankr.

LEXIS 2543, 2013 WL 3225077, at *3 (Bankr. W.D. Pa. June 25, 2013).

65.     To establish nondischargeability as larceny under §523(a)(4), the

plaintiff must establish (1) a fraudulent and wrongful taking; (2) of another's

property; (3) with intent to convert; (4) without the owner's consent. *Am. Fed. of

State v. Marshall (In re Marshall)*, 623 B.R. 123, 139 (Bankr. E.D. Pa. 2020).

66.     The plaintiff must establish the debtor had the specific intent to

commit larceny. *Roemmele*, 2011 Bankr. LEXIS 3953, 2011 WL 4804833, at *10.

67.     In other words, the creditor must prove by a preponderance of the

evidence that the debtor feloniously took the creditor's personal property with the

intent to convert it or deprive the creditor of it. *Am. Fed. of State v. Marshall (In re

Marshall)*, 623 B.R. 123, 139 (Bankr. E.D. Pa. 2020) (citing *In re Burk*, 583 B.R.

655, 671 (Bankr. N.D. Miss. 2018) aff'd sub nom, *Smith v. Mid-S. Maint., Inc.*, 363

F. Supp. 3d 701 (N.D. Miss. 2019), aff'd sub nom, *Smith v. Mid-South Maint., Inc.*

(In re Smith), 789 Fed. Appx. 478 (5th Cir. 2020); *In re Bowie*, 2010 Bankr. LEXIS

3868, 2010 WL 4340209, at *4 (Bankr. D. Conn. Oct. 25, 2010)).

68.     In this matter, there can be no doubt that the Debtor has engaged in

both larceny and embezzlement, as the Debtor has misappropriated over $1.2

million from Plaintiff Wiley, and the Debtor has unlawfully taken possession and

control of these funds, and then improperly liquidated these funds by gambling

them away, without any authorization.

69.     Accordingly, while the Debtor's actions only need to satisfy one of the

three bases for nondischargeability, the Debtor's improper and illegal actions

actually meet all three bases, and, therefore, the Debtor should be denied his

discharge pursuant to §523(a)(4).

WHEREFORE, Plaintiff Michael Wiley respectfully requests an Order

denying Debtor a discharge, together with such other relief as the Court deems

necessary and appropriate

                              BERGER LAW GROUP, PC


Dated:  7/5/22              By:  _Phillip D. Berger_____
                                 PHILLIP D. BERGER, ESQUIRE
                                 919 Conestoga Road, Building 3, Suite 114
                                 Rosemont, PA  19010
                                 (610) 668-0800
                                 PA ID #58942

**EXHIBIT 1**

*Filed and Attested by
PROTHONOTARY
12 Jul 2019 10:09 AM
S. Peery*

Dimitri L. Karapelou, Esquire
Law Offices of Dimitri L. Karapelou, LLC
Two Penn Center, Suite 920
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
(p): (215) 391 – 4312
(f): (215) 701 – 8707
dkarapelou@karapeloulaw.com
ATTORNEY FOR PLAINTIFF

## IN THE COURT OF COMMON PLEAS

## CHESTER COUNTY, PENNSYLVANIA

| | |
|---|---|
| **MCGRATH TECHNICAL STAFFING SOLUTIONS, INC. d/b/a MCGRATH SYSTEMS,**<br>**1787 Sentry Parkway West**<br>**Building #16, Suite 215**<br>**Blue Bell, PA 19422**<br><br>*Plaintiff,*<br><br>vs.<br><br>**PATRICK OLSON**<br>**101 Blossom Way**<br>**Pottstown, PA 19465,**<br><br>*Defendant.* | **CIVIL DIVISION**<br><br><br>**CASE NO.** |

## PRAECIPE TO ENTER JUDGMENT BY TRANSFER

TO THE PROTHONOTARY:

Pursuant to Pennsylvania Rule of Civil Procedure 3002, please enter judgment in the above matter by transfer from Montgomery County Court of Common Pleas against Defendant Patrick Olson in accordance with the attached Certified Judgment, Exhibit "A" and assess damages as follows:

Principal:                                          $3,678,122.58

Post-judgment interest to accrue at the statutory rate of six (6) percent per annum

LAW OFFICES OF DIMITRI L. KARAPELOU, LLC

By:      */s/  Dimitri L. Karapelou*
Dimitri L. Karapelou, Esquire
Attorney for Plaintiff

AND NOW, this _____ day of _____ , 2019, Judgment is entered in favor of Plaintiff and against Defendant Patrick Olson by transfer from Montgomery County Court of Common Pleas and damages

assessed in the sum of $_____, and Post-judgment interest to accrue at the statutory rate of six (6) percent per annum as per above statement.

_____
PROTHONOTARY

Judgment certified in the amount of $ 3,678,122.58

In favor of

Plaintiff(s)

*McGrath Technical Staffing Inc. DBA McGrath Systems*

Case #2018-22559

| | |
|---|---|
| Case Number | 2018-22559 |
| Commencement Date | 9/20/2018 |
| Case Type | Complaint Civil Action |
| PFA Number | |
| Caption Plaintiff | MCGRATH TECHNICAL STAFFING INC DBA MCGRATH SYSTEMS |
| Caption Defendant | OLSON, PATRICK |
| Lis Pendens Indicator | No |
| Status | 4 - OPEN |
| Judge | WEILHEIMER |
| Remarks | |
| Sealed | No |
| Interpreter Needed | |

And against

Defendant(s) *Patrick Olson*

Date *6/24/19*

## Plaintiffs

| Name | Address | Country | Counsel | Notify | Sequence |
|---|---|---|---|---|---|
| MCGRATH TECHNICAL STAFFING INC DBA MCGRATH SYSTEMS (MCGRATH SYSTEMS) | 1787 SENTRY PARKWAY WEST, BLDG 16 SUITE 215 BLUE BELL, PA 19422 UNITED STATES | UNITED STATES | KARAPELOU, DEMITRI L | Yes | 1 |

## Defendants

| Name | Address | Country | Counsel | Notify | Sequence |
|---|---|---|---|---|---|
| OLSON, PATRICK | 101 BLOSSOM WAY POTTSTOWN, PA 19465 UNITED STATES | UNITED STATES | | Yes | 1 |

## Docket Entries

| Seq. | | Filing Date | Docket Type | Docket Text | Sealed | Filing ID |
|---|---|---|---|---|---|---|
| 0 | E | 9/20/2018 | Complaint Civil Action | | No | 11969009 |
| 1 | | 11/13/2018 | (Internal Use Only) Served | PATRICK OLSON ON 10/16/18 CHESTER CO | No | 12060280 |
| 2 | E | 11/19/2018 | Default Judgment Entered in Favor of | MCGRATH TECHNICAL STAFFING INC DBA MCGRATH SYSTEMS & AGAINST PATRICK OLSON IN AMOUNT OF $3,678,122.58. NOTICE 236 SENT ON 11-19-2018 WITH AFFIDAVIT OF NON-MILITARY SERVICE | No | 12069006 |
| 3 | E | 11/19/2018 | Certification of Addresses | | No | 12069076 |
| 4 | E | 11/20/2018 | Affidavit/Certificate of Service of | PRAECIPE FOR ENTRY OF DEFAULT JUDGMENT ON 11/20/2018 TO DEFENDANT PATRICK OLSON | No | 12069622 |
| 5 | E | 4/10/2019 | Entry of Appearance | OF DIMITRI L. KARAPELOU, ESQUIRE FOR PLAINTIFF MCGRATH TECHNICAL STAFFING SOLUTIONS, INC. D/B/A MCGRATH SYSTEMS | No | 12260623 |
| 6 | E | 4/10/2019 | Affidavit/Certificate of Service of | ENTRY OF APPEARNCE ON 04/10/2019 TO PATRICK OLSON | No | 12260628 |
| 7 | E | 4/25/2019 | Praec-Writ of Execution Money Judgment w/o Garnishee | AGAINST PATRICK OLSON | No | 12280770 |

*2019-06782-JD*

| Seq. | | Filing Date | Docket Type | Docket Text | Sealed | Filing ID |
|------|---|-------------|-------------|-------------|--------|-----------|
| 8 | E | 5/7/2019 | Affidavit/Certificate of Service of | PLAINTIFF MCGRATH TECHNICAL STAFFING SOLUTIONS, INC.'S FIRST REQUEST TO DEFENDANT IDEA IT SOLUTIONS, LLC TO PRODUCE DOCUMENTS AND NOTICE OF DEPOSITION ON 04/15/2019 TO PATRICK OLSON | No | 12298741 |
| 9 | E | 5/7/2019 | Withdrawal of Appearance of | CHRISTOPHER C. POPPER FOR PLAINTIFF | No | 12299281 |
| 10 | E | 5/7/2019 | Affidavit/Certificate of Service of | PRAECIPE FOR WITHDRAW OF APPEARANCE OF CHRISTOPHER C. POPPER ON 05/07/2019 TO DEFENDANT | No | 12299286 |
| 11 | E | 5/14/2019 | Motion | BY MCGRATH TECHNICAL STAFFING INC DBA MCGRATH SYSTEMS TO COMPEL DISCOVERY AND DEPOSITION WITH BRIEF WITH SERVICE ON 5/14/2019 | No | 12307230 |
| 12 | E | 5/14/2019 | Affidavit/Certificate of Service of | MOTION TO COMPEL DISCOVERY AND DEPOSITION ON 05/14/2019 TO PATRICK OLSON | No | 12307252 |
| 13 | | 5/16/2019 | Rule | DATE ON 6/17/19 KEHS CA | No | 12311082 |
| 14 | E | 5/17/2019 | Affidavit/Certificate of Service of | RULE TO SHOW CAUSE ISSUED 5.16.2019 ON 5/17/2019 TO PATRICK OLSON | No | 12314871 |
| 15 | | 6/5/2019 | (Internal Use Only) Not Found as to | PATRICK OLSON ON 6/4/19 | No | 12337055 |
| 16 | | 6/19/2019 | Order | (SUR PLTF'S MOTION TO COMPEL PRODUCTION OF DOCS AND DEPOSITION (SEQ 11 D) OF 6/18/2019 MOORE,J MOTION STRICKEN WITHOUT PREJUDICE CC THIS DOCUMENT WAS DOCKETED AND SENT ON 06/19/2019 | No | 12356339 |

## Judgments

| For | Against | Date | Amount |
|-----|---------|------|--------|
| MCGRATH TECHNICAL STAFFING INC DBA MCGRATH SYSTEMS | OLSON, PATRICK | 11/19/2018 | 3678122.58 |
| MCGRATH TECHNICAL STAFFING INC DBA MCGRATH SYSTEMS | OLSON, PATRICK | 4/25/2019 | WRIT/EXEC |

*2019-06782-JD*



**Type:**                FOREIGN JUDGMENT

By:



_____
 Matt Holliday, Prothonotary

_____

Stephanie M. B. Peery, Deputy

Electronically signed on 2019-07-12 10:30:25    page 5 of 5

*2019-06782-JD*

*Filed and Attested by
PROTHONOTARY
23 Nov 2021 09:13 AM
C. Luna-Valente*

BERGER LAW GROUP P.C.                    ATTORNEYS FOR PLAIN
By:    PHILLIP D. BERGER, ESQUIRE (#58942)
        MATTHEW R. KAUFMANN, ESQUIRE (#206991)
919 Conestoga Road, Building 3, Suite 114
Rosemont, PA  19010
(610) 668-0800

| | |
|---|---|
| MCGRATH TECHNICAL STAFFING, INC., d/b/a MCGRATH SYSTEMS | COURT OF COMMON PLEAS CHESTER COUNTY |
| Plaintiff, | |
| v. | NO.    2019-06782-JD |
| PATRICK OLSON | |
| Defendants. | |

### *PRAECIPE TO ASSIGN JUDGMENT*

TO THE PROTHONOTARY:

Kindly assign the attached judgment in the sum of $3,678,122.58 in the above-captioned

matter at Chester County, Docket No. 2019-06782-JD from MCGRATH TECHNICAL STAFFING,

INC., d/b/a MCGRATH SYSTEMS to MICHAEL WILEY, who has an address at 721 Arbor Way,

Unit 25, Blue Bell, PA 19422.

BERGER LAW GROUP, PC

By:    *Phillip D. Berger*
        PHILLIP D. BERGER, ESQUIRE

Dated:    11/12/2021

**EXHIBIT 2**

## SECURED PROMISSORY NOTE

Principal Amount:  $1,261,000.00                              Dated:   April 6, 2018

FOR VALUE RECEIVED, Idea IT Solutions, LLC, with an office at 101 Blossom Way, Pottstown, PA 19465 ("***Borrower***"), promises to pay to McGrath Technical Staffing, Inc. d/b/a McGrath Systems, with an office at 1787 Sentry Parkway West, Bldg. 16, Ste. 215, Blue Bell, PA 19422 ("***Lender***"), the principal sum of $1,261,000 (the "***Principal Amount***") plus interest accrued thereon and a Premium Payment (as defined below), pursuant to the terms of this Promissory Note (this "***Note***").

1.     Payment; Interest.  Subject to the provisions set forth in Sections 3 and 6 hereof, and unless otherwise agreed by Borrower and Lender in writing, the Principal Amount and interest thereon and the Premium Payment (collectively, the "***Amounts Owed***") shall be paid by Borrower to Lender in equal monthly installments of $40,000, via wire commencing on June 19, 2018; provided, however, that all project-based revenues of Borrower shall also immediately be paid over to Lender in repayment of the Amounts Owed.  Interest shall accrue on the Principal Amount of this Note (but not the Premium Payment), commencing on the date hereof, at an annual rate equal to five percent (5%).  All past due amounts shall also accrue interest at a rate of 1.5% per month.

2.     Premium Payment.  In addition to the repayment of the Principal Amount and interest thereon according to Section 1 above, Borrower shall pay to Lender a premium payment in the amount of $2,426,000 (the "***Premium Payment***").  Therefore, the aggregate amount of the Principal Amount and the Premium Payment to be paid by Borrower to Lender hereunder shall be $3,600,000.  Provided, however, that all project-based margins from projects of Borrower shall also immediately be paid over to Lender in repayment of the Amounts Owed in a 60 / 40 split. Lender would receive 60% of the gross margin and Borrower would receive 40% of gross margin after the cost of equipment.

3.     Payment; Prepayment.

(a)     Notwithstanding any provision of this Note to the contrary, the Amounts Owed shall become immediately due and payable upon an "Event of Default" (as defined in Section 6 hereof).

(b)     All payments shall be made in lawful money of the United States of America at such place as Lender may from time to time designate in writing to Borrower.  Payment shall be credited first to the accrued interest then due and payable hereunder.

(c)     All or a portion of the Amounts Owed under this Note may be prepaid at any time by Borrower without penalty.

4.     Grant of Security Interest; Priority.  As collateral security for the prompt and complete payment and performance of all of Borrower's obligations and liabilities to Lender under this Note, Borrower hereby grants to Lender a continuing general lien on and security interest in all of Borrower's right, title and interest in the assets of Borrower (the "***Collateral***").  Borrower represents and warrants that the security interest granted to Lender under this Note, when properly perfected, shall (a) constitute at all times a valid security interest vested in Borrower in all of the Collateral and (b) at no time become subordinate or junior to any other security interest, lien, encumbrance or claim.

ACTIVE 54552992.v3

5.    Perfection of Security Interest. To perfect and maintain the security interest granted in this Note and in order to fully consummate the transactions contemplated by this Note, Borrower does hereby authorize Lender to file or cause to be filed, concurrently with Borrower's execution and delivery of this Note and at any time thereafter all financing statements, continuation financing statements, security agreements, chattel mortgages, pledges, assignments, endorsements of certificates of title, applications for title, affidavits, reports, notices, schedules of accounts, letters of authority, and all other documents that Lender may reasonably require, in form satisfactory to Lender.

6.    Events of Default. The occurrence, after the date hereof, of one or more of the following events shall constitute an event of default hereunder (an "*Event of Default*"):

(a)    Borrower shall fail to make any payment due to Lender under this Note within ten (10) days after written notice from Lender that such amount is due;

(b)    Borrower shall fail to observe or perform any other covenant or agreement required to be observed or performed by Borrower under this Note, and the continuation of such failure for ten (10) days after written notice of same from Lender; or

(c)    Borrower: (i) becomes bankrupt or generally fails to pay its debts as such debts become due; (ii) is adjudicated insolvent or bankrupt; (iii) admits in writing its inability to pay its debts; (iv) suffers a custodian, receiver or trustee appointed for it or substantially all of its property; (v) makes an assignment for the benefit of creditors; or (vi) suffers proceedings under any law related to bankruptcy, insolvency, liquidation or the reorganization, readjustment or the release of debtors to be instituted against it; or if proceedings under any law related to bankruptcy, insolvency, liquidation, or the reorganization, readjustment or the release of debtors is instituted or commenced by Borrower; or if any order for relief is entered relating to any of the foregoing proceedings; or if Borrower shall by any act or failure to act indicate its consent to, approval of or acquiescence in any of the foregoing.

7.    Confession of Judgment. Upon an Event of Default, Borrower hereby irrevocably authorizes the Prothonotary or any attorney of any court of record in Pennsylvania or elsewhere to appear for and confess judgment against Borrower for any and all amounts unpaid hereunder, together with any other charges, costs and expenses for which Borrower is liable under this Note, and together with fees of counsel in the reasonable amount of ten percent (10%) of all of the foregoing (but in no event less than $10,000.00) and costs of suit, releasing all errors and waiving all rights of appeal. If a copy of this Note, verified by affidavit, shall have been filed in such proceeding, it shall not be necessary to file the original as a warrant of attorney. Borrower hereby waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of this warrant and power to confess judgment shall be deemed to exhaust this power, whether or not any such exercise shall be held by any court to be invalid, voidable or void, but this power shall continue undiminished and may be exercised from time to time as often as Lender shall elect until all sums due hereunder shall have been paid in full. Interest shall continue to accrue after entry of judgment hereunder, by confession, default, or otherwise, at the higher of the prevailing rate of interest under this Note, or the judgment rate of interest under applicable law.

8.    NOTICE: THIS NOTE CONTAINS, AT SECTION 7, A WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST BORROWER. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST BORROWER, BORROWER HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, AND ON THE ADVICE OF SEPARATE COUNSEL OF BORROWER UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS BORROWER HAS OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING

ACTIVE 54552992.v3

UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE UNITED STATES, THE COMMONWEALTH OF PENNSYLVANIA, OR OF ANY OTHER STATE.

9.      Guaranty. Patrick Olson (the "**Guarantor**") hereby unconditionally personally guarantees the prompt, punctual and full payment of all amounts due under this Note. The Guarantor agrees that he may be joined in any action or demand against Borrower and that recovery may be had against the Guarantor in such action or demand.

10      Transfer; Successors and Assigns. The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors, trustees, and assigns of the parties. Notwithstanding the foregoing, Borrower may not assign, pledge, or otherwise transfer this Note without the prior written consent of Lender.

11.      Governing Law; Jurisdiction. This Note and the respective rights and obligations of the parties shall be governed by and determined in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to its conflicts of law principles or rules. Each party hereby irrevocably consents to the exclusive jurisdiction of the state courts in Montgomery County, Pennsylvania, and irrevocably agrees that all actions or proceedings relating to this Note shall be litigated in such courts. Each party waives any objection which it may have based on lack of personal jurisdiction, improper venue or forum non conveniens to the conduct of any proceeding in any such court and waives personal service of any and all process upon them.

12      Notices. All notices, requests, consents, and other communications required or permitted to be given under this Note shall be in writing and shall be deemed to have been duly given if delivered personally, or mailed first-class, postage prepaid, by registered or certified mail (notices sent by mail shall be deemed to have been given on the date sent), to the address first set forth above for each party (or to such other address as the parties shall designate by notice in writing to the other).

13.      Amendments and Waivers. No modification or waiver of any provision of this Note or consent or departure therefrom shall be effective unless in a writing and signed by Borrower and Lender.

14.      **Entire Agreement. This Note constitutes the entire agreement among Borrower and Lender with respect to the subject matter hereof and supersedes all prior agreements and understandings among Borrower and Lender (whether written or oral) relating to such subject matter, including, but not limited to, all other promissory notes or other loan documents previously executed by and between Borrower and Lender.**

*[signature page follows]*

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, the undersigned have executed this Note as of the date first set forth above:

**BORROWER:**

IDEA IT SOLUTIONS, LLC

By:_____
Name: Patrick Olson
Title: Chief Executive Officer

**Acknowledged and Agreed:**

**Lender:**

MCGRATH TECHNICAL STAFFING, INC.
D/B/A: MCGRATH SYSTEMS

By:_____
Name: Michael Wiley
Title: Chief Executive Officer

**GUARANTOR:**

_____
Patrick Olson

ACTIVE 54552992 v3