**BERGER LAW GROUP P.C.**

Phillip D. Berger *†
Matthew R. Kaufmann

*Of Counsel*
Michael S. Dinney

* Also member of New Jersey Bar
† Also member of Washington, D.C. Bar

919 Conestoga Road
Building 3, Suite 114
Rosemont, PA 19010
Tel. 610-668-0800
Fax 610-668-2800
www.BergerLawPC.com

Berger@BergerLawPC.com
(610) 668-0774

February 20, 2023

**VIA E-FILING**
The Honorable Magdeline D. Coleman
Chief U.S. Bankruptcy Judge
Eastern District of Pennsylvania Bankruptcy Court

      **IN RE:** *Patrick Lee Olson; Michael Wiley v. Patrick Lee Olson*
          *Adversary Action No. 22-00058*

Dear Judge Coleman:

    We represent Michael Wiley, successor by assignment from McGrath Technical Staffing, Inc., d/b/a McGrath Systems in the above matter. Pursuant to Your Honor's request, please accept this letter as Plaintiff Wiley's submission in response to Your Honor's request for a Letter Brief in Further Support of Plaintiff's Motion for Summary Judgment.

    As you may recall, Your Honor specifically requested that the parties to this Adversary Action submit a Letter Brief addressing a limited number of legal issues prior to the Pre-Trial Conference. These issues include: (1) Whether 523(a)(7) applies to the Civil Restitution Judgments in this matter; and (2) Whether Defendant Olson meets the Bankruptcy requirements for a fiduciary with regard to 523(a)(4).

    As will be shown below, the Civil Restitution Judgment at issue in this matter should be considered non-dischargeable, and Defendant Olson does meet the requirements under bankruptcy law to be considered a fiduciary of Plaintiff Wiley.

    **1. 523(a)(7) Applies to the Restitution Judgment**

    First, with regard to whether 523(a)(7) applies to the Restitution Judgment ordered in this matter, Section 523(a)(7) excepts from discharge the bankrupt's debts to the extent "such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss… ." *In re Thompson*, 418 F.3d 362, 363 n.1 (3d Cir. 2005).

While the question discussed at the hearing related to whether this section also applied to restitution which eventually benefits an individual, Courts in this jurisdiction have found that restitution Orders are not dischargeable regardless of whether the funds benefit a governmental unit or an individual. For example, *In re Thompson*, 418 F.3d 362 (3d Cir. 2005), the Court specifically found when faced with the question of whether a restitution order from a state criminal proceeding that directed payment to the fraud victim was dischargeable in a Chapter 7 Bankruptcy proceeding, the Third Circuit determined that "the Supreme Court meant what it said in Kelly when it held that '§ 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence.'" *Thompson*, 418 F.3d at 363 (also noting that "we are confident that … state criminal restitution orders are not dischargeable under Chapter 7 either, and that this rule applies regardless of whether the victim-restitution payee is a governmental unit or an individual.").

Thompson's holding has been positively cited in numerous cases since it was entered in 2005. *See, e.g., McNelis v. Varano*, Nos. 4:10-bk-02757-JJT, 4:12-ap-00336-JJT, 2013 Bankr. LEXIS 4011, at *3-4 (Bankr. M.D. Pa. Sep. 25, 2013) ("A review of those decisions [*Thompson*] makes clear that fines, costs, and restitution orders are not dischargeable and can be collected from a debtor after a chapter 7 discharge".).

The holding of *Thompson* clearly applies in this matter, and thus, the Restitution Judgment should be deemed non-dischargeable by this Court pursuant to 523(a)(7).

Moreover, to the extent that Your Honor was entertaining Defendant's claim that the Restitution Judgment, even if deemed non-dischargeable should be reduced, such a claim is contradicted by the above case law. Specifically, this Court's reduction of a state criminal proceedings restitution would violate the rights of the states to unfettered administration of their criminal justice system. *In re Thompson,* 418 F.3d 362, 368 (3d Cir. 2005) *citing Kelly*, 479 U.S. at 43-44 ("Here, as in *Kelly*, 'we must consider the language of … § 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems.'").

Furthermore, and importantly, it should be noted that the Restitution Judgment in this matter was not entered in favor of Plaintiff Wiley, but was entered in favor of the Montgomery County Clerk of Court. A true and correct copy of the entered Restitution Judgment is attached hereto as Exhibit "A". In the matter In re *Thompson*, the restitution was payable to the Cape May Probation Department. This matter is similar to *Thompson* as the restitution payment was made payable to the Montgomery County Clerk of Court. In fact, nowhere on the Restitution Judgment in this matter does the judgment reference Plaintiff Wiley.

Based on the above case law and facts, Section 523(a)(7) is applicable to this matter, and the whole Restitution Judgment is non-dischargeable.

### 2. Defendant Olson Was A Fiduciary to Plaintiff Wiley

Section 523(a)(4) provides that "**(a)** A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -- **(4)** for fraud or defalcation while acting in a fiduciary capacity, . . .".  The term "fiduciary capacity" in the context of § 523(a)(4) is a narrow concept that is determined by federal bankruptcy law, not state law. *Estate of Harris v. Dawley (In re Dawley)*, 312 B.R. 765, 777 (Bankr. E.D.Pa. 2004); *Windsor v. Librandi (In re Librandi)*, 183 B.R. 379, 382 (Bankr. M.D.Pa. 1995).   Section 523(a)(4) requires the existence of an express or technical trust. *Villas at Bailey Springs Homeowners Ass'n, Inc. v. LaRicci*, No. 1:10-CV-1952, 2011 U.S. Dist. LEXIS 112321, 2011 WL 4591962, at *2 (M.D.Pa. Sept. 30, 2011).

Although federal law defines "fiduciary capacity," state law is crucial in determining whether an express or technical trust exists. *Dawley*, 312 B.R. at 777; *United States v. Bagel (In re Bagel)*, No. 92-11440, 1992 Bankr. LEXIS 2501, 1992 WL 477052, at *13 (Bankr. E.D.Pa. Dec. 17, 1992). Bankruptcy courts across the three districts of Pennsylvania have used Pennsylvania's state-law rules of trust formation to determine the ultimate federal question of "fiduciary capacity." *See, e.g., Dawley*, 312 B.R. at 777; *Verrone v. Verrone (In re Verrone)*, 277 B.R. 66, 72 (Bankr. W.D.Pa. 2002); *Griffith v. Taylor (In re Taylor)*, 195 B.R. 624, 629 (Bankr. M.D.Pa. 1996); *Erie Materials, Inc. v. Dombroski (In re Dombroski),* 478 B.R. 198, 202 (Bankr. M.D. Pa. 2012).  Moreover, an express or technical trust can be created without a formal writing "so long as it is characterized by trust-type obligations imposed under state or common law.*" In re Dawley*, 312 B.R. at 777 (citation omitted).

Here, it should be noted that the CSS project was to be a project for the company owned 50% by Plaintiff Wiley and 50% by Defendant Olson, through Idea IT Services, LLC.  During the deposition of both Plaintiff Wiley and Defendant Olson, each confirmed that they owned one half of the company.

Further, Defendant Olson signed certain loan documents on behalf of Idea IT Services, LLC as its Managing Director, and also signed the alleged CSS Contract as its president.  As the company was a LLC, assumedly Defendant Olson meant to sign the documents as its Managing Member.  As managing member (or Managing Director, or President) of this company, which company Defendant Olson used to conduct his fraudulent scheme, it is clear that Defendant Olson was in an express or technical trust position, satisfying this requirement of Section 523(a)(4).

Moreover, even if Plaintiff is not able to satisfy the narrow definition of a fiduciary with regard to 523(a)(4), Section 523(a)(4) also includes embezzlement and larceny as a ground for non-dischargeability.

Embezzlement (and larceny) do not require a fiduciary relationship. *See Anzalone v. Dulgerian (In re Dulgerian)*, 388 B.R. 142, 150 (Bankr. E.D. Pa. 2008). Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Estate of Stanford Harris v. Dawley (In re Dawley)*, 312 B.R. 765, 779 (Bankr. E.D. Pa. 2004) (citation omitted).

To state a claim for embezzlement under Section 523(a)(4), a plaintiff must demonstrate:

> (1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor appropriated for his own use; and (5) with fraudulent intent.

*In re Dulgerian*, 388 B.R. at 150 (citation omitted); *see In re Dawley*, 312 B.R. at 779 (citation omitted).

"Fraudulent intent may be 'determined from the facts and circumstances surrounding the act.'" *In re Dawley*, 312 B.R. at 779 (*citing C & J Rentals Inc. v. Purdy (In re Purdy)*, 231 B.R. 310, 312 (Bankr. E.D. Mo. 1999)); *Hoffman v. Stamou (In re Stamou)*, Nos. 07-28685 (DHS), 08-01231 (DHS), 2009 Bankr. LEXIS 996, at *18 (Bankr. D.N.J. Mar. 19, 2009).

In this matter, even if the Defendant was not a fiduciary (however, Defendant was a fiduciary), Defendant did steal money from the Plaintiff that Defendant was entrusted with, the Defendant used this money for his own use (living expenses and gambling), and the Defendant gained this money from a fraudulent scheme involving lies and forgery. Thus, due to Defendant's embezzlement, pursuant to 523(a)(4), the entered judgment of $3,678,122.58 is not dischargeable.

Accordingly, as Plaintiff's claims against the Defendant meet multiple requirements of Section 523(a)(4), the entered Judgment of $3,678,122.58 is non-dischargeable.

### 3. The Question of Fraudulent Inducement and Judicial Estoppel Were Deemed Factual Issues By The Court

Finally, while the Defendant has chosen to include additional issues in his Letter Brief related to his argument for Judicial Estoppel and fraudulent inducement, this Court stated during the hearing that these are factual issues that

require trial. Specifically, the Court noted that it only wanted briefing on issues relevant to Section 523(a)(7) (restitution) and 523(a)(4) (fiduciary).

Accordingly, Plaintiff will not brief these issues at this time, since he was not requested to do so by the Court. However, for the sake of clarity, Plaintiff reaffirms what was stated during the hearing.

Specifically, with regard to the judicial estoppel argument related to Plaintiff's $1.00 valuation of his company during his bankruptcy, the $1.00 valuation included the value of the company's assets (including the Judgment), less its liabilities (caused by Defendant). It should be noted that these liabilities were so significant that it drove the company (which had been very successful before Defendant Olson's fraudulent scheme) to go out of business. Further, this downturn which was specifically caused by Defendant's fraudulent and criminal scheme, and which also caused Plaintiff's personal bankruptcy. Defendant's claim that Plaintiff valued the Judgment at $1.00 is wholly disingenuous and wrong.

Further, Plaintiff once again must object to the Defendant attempting to paint the Plaintiff as playing fast and loose with the law. It must be remembered that it is the Defendant who conducted this fraudulent scheme targeting the Plaintiff, which conduct involved Defendant's lies, forgery, and the Defendant's gambling, which caused the loss of millions of dollars. It was Defendant's intentional and bad actions which resulted in the criminal prosecution, in which the Defendant was found guilty. The Defendant is not the victim here. The Plaintiff suffered terribly due to the Defendant's direct, intentional and improper conduct.

Additionally, with regard to the Defendant's claims regarding fraudulent inducement, Plaintiff must again remind this Court that it was the Defendant's lies and deceit which are at the basis of this claim. The Defendant invented the CSS project, the Defendant lied to the Plaintiff for months about the existence of that project, and the Defendant continued to lie to the Plaintiff about why there was no money coming in from the CSS project. Plaintiff justifiably relied on all of these lies made by his business partner. To claim otherwise is to claim that Plaintiff should never have believed his own business partner, or that Plaintiff should have known that he was being betrayed. This is just a ludicrous argument by the Defendant and is just wrong.

The simple truth of this matter is that the Defendant's fraudulent scheme did not start with the forgery, as the scheme started much earlier in 2017 when the Defendant approached Plaintiff about Defendant's entirely fictitious and false CSS project. The Defendant's forgery is but one element of the fraud; however, the entire CSS project was a blatant falsehood and misrepresentation by the Defendant, as admitted to by the Defendant during his deposition. See Olson Deposition Transcript, at pages 32-37.

      Plaintiff Wiley has testified as to the amounts given to Defendant Olson for the CSS project.  Plaintiff Wiley has made it clear that Plaintiff Wiley had provided Defendant Olson with millions of dollars in prior projects, which were not productive.  When Plaintiff Wiley first demanded the return of these amounts, Defendant Olson then convinced Plaintiff Wiley to let Defendant keep those funds for the CSS project.  Plaintiff could have forced Defendant to sell all of the equipment purchased for those prior projects (if said equipment actually existed), and demanded the return of the money at that time.  However, Defendant Olson convinced Plaintiff Wiley to use those provided funds for the CSS project.  The spreadsheet cited by the Defendant makes clear that Plaintiff provided Defendant with over $1,174,000.00 that was to be used for the CSS project.  See Wiley Deposition Transcript, at pages 41-42.

      Defendant Olson also promised Plaintiff Wiley that Plaintiff was to receive at least $2.5 million in distributions from the CSS project, which distributions were never made.  Plaintiff Wiley has been forced to shoulder the interest and costs associated with the CSS project loans.  Accordingly, the combination of all of these losses by the Plaintiff (and the fact that Olson's fraud lead to McGrath going out of business and causing Plaintiff to file a personal bankruptcy) clearly justifies the entire Judgment amount of $3,678,122.58 being deemed nondischargeable.  The entire Judgment amount of $3,678,122.58 is a direct result of the Defendant's false, intentional, and fraudulent actions.

      If your Honor has any additional questions, please let us know.

      Respectfully submitted,

*Phillip D. Berger*

PHILLIP D. BERGER

PDB/slt
Enclosure
cc:  Mark A. Cronin, Esq.
     Michael Wiley

**EXHIBIT A**

Commonwealth of Pennsylvania
Court of Common Pleas
County of Montgomery
38th Judicial District



**PRAECIPE TO ENTER JUDGMENT/
ENTRY OF JUDGMENT**

Clerk of Court
v.
Patrick Lee Olson

Civil Docket No: 2022-02887
DOB: 07/09/1973

## Praecipe to Enter Judgment

To the Prothonotary:

Enter judgment in favor of Plaintiff, Clerk of Court, against Defendant Patrick Lee Olson, 101 Blossom Wy Pottstown, PA 19465, with respect to docket number and judgment amount listed below.

Docket No.: CP-46-CR-0007654-2019

Amount: $1,042,258.87

02/09/2022
Date

Clerk of Courts

## Entry of Judgment

AND NOW, this 1st day of March, 2022, Judgment is entered in favor of the Plaintiff and against the Defendant in the amount set forth above.

2022-02887-0000  3/1/2022 11:09 AM  # 13431503
Rcpt#Z4182963  Fee:$0.00  Judgment/Fines/Costs/Restituti
Main (Public)
MontCo Prothonotary

Prothonotary

CPCMS 2215

IN THE COURT OF COMMON PLEAS OF
MONTGOMERY COUNTY, PENNSYLVANIA

*2022 MAR -1 A 11:15*

*OFFICE OF THE PROTHONOTARY MONTGOMERY COUNTY*

COUNTY OF MONTGOMERY

VS

Patrick Olson

2022-02887

No. CR-7654-2019

# 236 NOTICE

NOTICE IS GIVEN THAT A JUDGMENT IN THE ABOVE CAPTIONED MATTER HAS BEEN ENTERED AGAINST YOU.

*N-M-*

NOAH MARLIER
PROTHONOTARY

If you have any questions concerning the above, please contact:

The Clerk of Courts Office
PO Box 311
Norristown, PA 19404-0311
(610) 278-3346

(rule 236 notice)