UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>PATRICK LEE OLSON,<br>Debtor. | Bankruptcy No. 22-11556-mdc<br><br>Chapter 7 |
| MICHAEL WILEY,<br>Plaintiff,<br><br>v.<br><br>PATRICK LEE OLSON,<br>Defendant. | Adversary Proc. No. 22-00058 |

## STIPULATION REGARDING JOINT PRE-TRIAL STATEMENT

Plaintiff and Defendant, by and through their undersigned counsel, respectfully agree to the following stipulation:

1. On February 4, 2023, the parties filed a Joint Pre-Trial Statement with this Honorable Court pursuant to the Pretrial Scheduling Order issued by this Court on August 10, 2022.

2. A Pretrial Conference was held telephonically on March 1, 2023.

3. On July 10, 2023, this Honorable Court entered a Scheduling Order governing evidentiary trial conducted remotely by videoconference, including submitting a Joint Pretrial Statement on or before August 1, 2023 in advance of the Zoom trial to be held August 8, 2023 at 12:30 pm.

4. Counsel agree that the Joint Pre-Trial Statement already filed in this case substantially comports to the requirements set forth in the August 1, 2023 Scheduling Order and

succinctly raises the substantial uncontested and contested facts as well as the issues to be litigated in this adversary proceeding.

5. Counsel respectfully requests that this Honorable Court allow use of the Joint Pre-Trial Statement for the upcoming trial August 8, 2023, in lieu of filing a new Joint-Pretrial Statement.

Respectfully submitted,

BERGER LAW GROUP P.C.

/s/ *Phillip D. Berger*
Phillip D. Berger, Esq.
919 Conestoga Road
Building 3, Suite 114
Rosemont, PA 19010
(610) 668-0800
berger@bergerlawpc.com
Attorney for Plaintiff Michael Wiley

KML Law Group, P.C.

/s/ *Mark A. Cronin*
Mark A. Cronin, Esq.
701 Market St., Suite 5000
Philadelphia, PA 19106
(484) 266-0832
mcronin@kmllawgroup.com
Attorney for Defendant Patrick Lee Olson

The parties' Stipulation to use the Joint Pre-Trial Statement filed February 4, 2023, in this adversary proceeding, in lieu of filing a new Joint Pre-Trial Statement is hereby APPROVED.

BY THE COURT:

Magdeline D. Coleman
Chief U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PATRICK LEE OLSON | : | CHAPTER 7 |
| Debtor. | : | No. 22-11556-mdc |
| | : | |
| MICHAEL WILEY, successor by assignment to MCGRATH TECHNICAL STAFFING, INC. d/b/a MCGRATH SYSTEMS | : | |
| Plaintiff, | : | ADVERSARY ACTION |
| v. | : | NO. 22-00058 |
| PATRICK LEE OLSON | : | |
| Defendant. | : | |

## JOINT PRE-TRIAL STATEMENT

Plaintiff Michael Wiley ("Wiley") and Defendant Patrick Lee Olson ("Olson") jointly file this Pre-Trial Statement, as follows:

**A.**  **Basis of Jurisdiction** – This Court has jurisdiction under 28 U.S.C. § 1334(b) and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I) pertaining to the dischargeability of certain debts.

**B.**  **Statement of Uncontested Facts:**

1.  On June 15, 2022, the Debtor filed a voluntary petition with this Court under Chapter 7 of the Bankruptcy Code.

2.  This matter relates to a judgment entered on November 19, 2018 in the Montgomery County Court of Common Pleas at Docket No. 2018-22559 in favor

1

of McGrath and against Mr. Olson in the amount of $3,678,122.58 (the "Judgment").

3. The Judgment was subsequently transferred to the Chester County Court of Common Pleas at Docket No. 2019-06782-JD and assigned to Plaintiff Wiley.

4. In or about 2017, the Debtor approached Mr. Wiley about a project that the two could work on together, with a company called CSS located in Virginia.

5. The Debtor was to handle the technical side of the project, while Mr. Wiley was to arrange and provide the funding for the project.

6. The Debtor forwarded to Mr. Wiley what Debtor claimed to be a fully executed contract with CSS (the "Contract"), which Contract was allegedly signed by CSS's Chief Operating Officer.

7. However, it was the Debtor who forged CSS' Chief Operating Officer's signature on the Contract.

8. Following receipt of the fully executed Contract, Mr. Wiley turned the Contract over to his bank as collateral for the loan Mr. Wiley took to fund the project.

9. Despite the fact that the project was fully funded, the project failed to close in 2017.

10. Demand was then made for return of the funds provided for the alleged CSS project.

11. Instead of the return of the funds obtained from Mr. Wiley's bank, the Debtor, by and through his entity Idea IT Solutions LLC ("Idea IT") then provided McGrath a promissory note in the amount of $1,261,000.00 (the "Loan") dated April 6,

        2018 (the "Note"), which Loan was unconditionally guaranteed by Debtor Olson (the "Guaranty").

12. The Note required that the Debtor repay the Loan via payments of $40,000.00 per month until the project closed.

13. While the Debtor made one payment, the Debtor made no further payments on this obligation.

14. The Judgment in the sum of $3,678,122.58 (representing monies given by Mr. Wiley to Defendant Olson to fund the CSS project, monies from other projects that were rolled into the CSS project, and monies representing some of the amounts Defendant Olson had promised that Mr. Wiley would receive from the CSS project), was thereafter entered against Defendant Olson.

15. Plaintiff Wiley contacted the Whitpain Police, who began an investigation of the Debtor's actions.

16. In September 2019, the Debtor was charged with forgery and was eventually found guilty and sentenced to 14 days in jail, as well as restitution in the amount $1,041,000.00, which restitution is supposed to be paid to Plaintiff Wiley through the Commonwealth (the "Restitution Judgment").

17. Based on the above facts, on July 5, 2022, Plaintiff Wiley filed this instant Adversary Complaint objecting to the defendant's Discharge.

18. The Adversary Complaint alleges that as the Judgment is a result of the Debtor's fraudulent and illegal acts, that the Debtor cannot simply discharge his obligations, being the $3,678,122.58 Judgment, stemming from said conduct.

3

19. Pursuant to this Court Scheduling Order, as modified, on December 22, 2022, both Plaintiff Wiley and Defendant Olson were deposed in order to review the Plaintiff's claims and the Defendant's alleged defenses thereto.

20. Plaintiff Wiley filed a personal bankruptcy on August 7, 2020, with his wife Jolene Hutton, Case No. 20-13273-mdc and received a discharge on November 19, 2020.

21. In that Chapter 7 bankruptcy case, Plaintiff Wiley listed the value of his 100% ownership in McGrath Technical Staffing, Inc. d/b/a McGrath Systems as $1.00 on his Schedule A/B Property, #19 and exempted that asset on his Amended Schedule C—Exemptions for $1.00, both schedules filed with the Bankruptcy Court.

22. After the bankruptcy, Plaintiff Wiley had his company McGrath Technical Staffing, Inc. d/b/a McGrath Systems assign the $3,678,122.58 Judgment entered in the Montgomery County Court of Common Pleas to himself on November 3, 2021 and, subsequently, transferred the Judgment to the Chester County Court of Common Pleas.

23. Plaintiff Wiley commenced execution on the $3,678,122.58 Judgment.

C. **Statement of Disputed Facts**:

1. The $3,678,122.58 Judgment is the result of the fraud perpetrator by the Defendant against McGrath and its principal Plaintiff Wiley.

2. The Debtor informed Mr. Wiley that the project was going to require

4

       approximately $2.5 million to $3.0 million in funding, of which the Debtor requested that Mr. Wiley supply one-half of these funds.

3. Plaintiff Wiley and Defendant had previously worked on other projects, with Plaintiff being satisfied as to the other projects except the alleged CSS project.

4. Mr. Wiley reviewed the information regarding the project provided by the Debtor and Mr. Wiley approached his bank about funding said project.

5. After Mr. Wiley's bank reviewed the project information, the Bank requested the assignment of the contract with CSS as collateral for the loan.

6. Unbeknownst to the Plaintiff or to the Bank, CSS's Chief Operating Officer had left CSS earlier in the year, and that individual had not signed the Contract.

7. Having no reason to doubt the authenticity of the Contract, Mr. Wiley presented the Contract to the Bank as collateral for the loan, and partially pursuant to said Contract, Mr. Wiley's Bank then approved the loan and began to fund the project in increments.

8. The Debtor began providing numerous excuses and stories to Plaintiff Wiley as to why the alleged CSS project was not closing.

9. When the project did not close in the beginning of 2018, Plaintiff Wiley requested that the Debtor either pay back the monies forwarded by Mr. Wiley from his Bank (for which Mr. Wiley was personally liable), or provide a promissory note to Mr. Wiley.

10. Mr. Wiley as CEO of McGrath Systems requested a Promissory Note be executed by Debtor's company and by him as a guarantor in early April of 2018 after

        Debtor's company had already received $490,000.00 from Mr. Wiley. There were no earlier requests for a Promissory Note.

11. The whole CSS project was bogus, and that the Debtor stole the money from the Plaintiff.

12. Plaintiff Wiley had provided the Debtor with over $1.2 million, which monies were supposed to be used by the Debtor to fund a real project for CSS.

13. Defendant Olson promised Plaintiff Wiley that Plaintiff Wiley would receive over $3 million from the CSS project.

14. The entire $3,678,122.58 Judgment was due to the Defendant's fraudulent conduct, as Plaintiff Wiley would not have given Defendant Olson any money, nor rolled any prior amounts over, nor relied on a promised return of over $3 million but for the fraudulent misrepresentations and lies from the Defendant.

15. McGrath Systems provided $490,000.00 to Defendant to pay for the CSS project.

16. McGrath Systems did provide additional sums for other projects that Plaintiff as CEO of McGrath Systems was satisfied.

17. Defendant Olson promised the Plaintiff that the CSS project would yield payments that totaled over $7 million, which payments were to be split between Plaintiff Wiley and Defendant Olson.

18. There was no CSS project, as it was all made up by the Defendant in order to extract millions of dollars from the Plaintiff and to prevent the Plaintiff from calling prior funding which Plaintiff had provided to the Defendant for other projects.

19. Instead of using the funds for the alleged CSS Project, the Debtor took this money for his own personal use.

20. The Debtor lost almost all of the $1.2 million provided by Plaintiff Wiley while gambling at various casinos, and in paying for Defendant's own personal expenses.

21. The restitution required monthly payments of $12,000.00 a month; however, no such payments have ever been made by the Debtor (the Debtor made only one partial payment in the amount of $50.00 to Plaintiff Wiley in restitution).

22. Plaintiff Wiley has been harmed by the Debtor's illegal, fraudulent and criminal acts.

23. Plaintiff Wiley is only entitled to the $1,041,000 restitution judgment being deemed non-dischargeable.

24. Plaintiff Wiley is entitled to the entire Judgment amount of $3,678,122.58, as the entire Judgment was the result of the Defendant's lies, misrepresentations, forgery, and deceit.

25. But for the Defendant's illegal and deceitful actions, Plaintiff would not be out the millions of dollars he gave to the Defendant, nor would Plaintiff have been forced to file for his own bankruptcy due to the financial burden which Defendant's deceit placed on the Plaintiff.

26. Defendant Olson admits that he intentionally lied to the Plaintiff regarding the existence of the CSS project.

27. Plaintiff Wiley lost only $490,000.00 on the CSS project.

28. Plaintiff Wiley has only received one payment in the sum of $50.00 from Defendant Olson related to the Restitution Judgment.

29. Plaintiff obtained a substantial lien against Defendant's Olson residence.

**D.    Damages or Other Relief**

Plaintiff Wiley is seeking the denial of the Defendant's discharge of the entire Judgment, in the amount of $3,678,122.58.

**E.    Legal Issues**

1. The Judgment entered against Debtor Olson by the State Court is not dischargeable pursuant to 11 U.S.C. § 523(a)(2).

   - In order to find a debt non-dischargeable under § 523(a)(2)(A), it has been held that the creditor must prove by a preponderance of the evidence: (1) debtor made a material representation of fact that she knew at the time was false or contrary to her true intentions, or failed to disclose a material fact; (2) debtor made the representation with the intention and purpose of deceiving the creditor; (3) the creditor justifiably relied on the such representation; and (4) the creditor suffered a loss or damages as a proximate cause of the false representation or act. *In re Giquinto*, 388 B.R. 152, 165 (Bankr. E.D. Pa. 2008).

2. The Judgment Is Nondischargeable Under 11 U.S.C. § 523(a)(4).

   - Section 523(a)(4) excludes from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4).

8

- Section 523(a)(4) effectively presents three distinct causes of action: (1) fraud or defalcation while acting in a fiduciary capacity; (2) embezzlement; or (3) larceny. *Sibbet v. Presutti (In re Presutti)*, 540 B.R. 154, 169 (Bankr. W.D. Pa. 2015).

- To establish grounds for dischargeability based on fraud or defalcation, a plaintiff must prove that the debtor acted as a fiduciary, while proof of a fiduciary relationship is not required for claims alleging embezzlement or larceny. *LL Lifestyle, Inc. v. Vidal (In re Vidal)*, 2012 Bankr. LEXIS 4198, at *59 (Bankr. E.D. Pa. Sept. 6, 2012).

3. Defendant Olson contends that judicial estoppel precludes the recovery of the $3,678,122.58 judgment by Plaintiff Wiley. The judgment was assigned from McGrath Systems to Plaintiff Wiley and which Plaintiff Wiley undervalued at $1.00 and exempted for $1.00 in that "a party should be prohibited from gaining an advantage by litigating on one theory and then subsequently seeking an additional advantage by pursing an irreconcilably inconsistent theory." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). *See also Barger v. City of Cartersville, Ga.*, 348 F.3d 1289 (11th Cir. 2003).

4. Defendant argues that the Restitution Judgment of $1,040,000.00 is already nondischargeable under 11 U.S.C. § 523(a)(7) and incorporates the same underlying claim as $3,678,122.58 judgment that Plaintiff Wiley is seeking to except from discharge.

5. Defendant Olson also contends that exceptions to discharge should be construed against the creditor and liberally in favor of the debtor. *Key Bank, N.A. v. Pfender (In re Pfender)*, 2022 Bankr. LEXIS 603, at 14 (Bankr. E.D. Pa. March 18 2022) (Coleman, Ch.J.). The nondischargeablility statutes in question are intentional tort statutes for fraud

9

and embezzlement and do not allow for the contractual windfall Plaintiff Wiley seeks in this action.

6. Finally, assuming *arguendo* that Plaintiff meets the elements on both his section 523(a)(2) and (a)(4) nondischargeability claims, Defendant Olson asserts his damages are limited to $490,000.00 which is the actual sum of money McGrath Systems wired Defendant Olson for work on the CSS project as demonstrated from its business records.

F. **Witnesses**

1. Plaintiff Michael Wiley – Will testify as to the facts of the matter.
2. Defendant Patrick Olson - Will testify as to the facts of the matter.
3. Richard Tomich – Will testify as to the facts of the matter.

G. **List of Exhibits**

1. The Judgement entered in Chester County at Docket No. 2019-06782-JD.
2. The Note and Guaranty.
3. The Olson Deposition Transcript.
4. The Wiley Deposition Transcript.
5. Relevant documents from Plaintiff's Document Production at Wiley – 0001 – 0171.
6. The Restitution Judgment
7. Plaintiff Wiley's Bankruptcy Schedules and the Statement of Financial Affairs from his 2020 case
8. Assignment of the Judgment

9.  Evidence of payments made by Defendant towards the Restitution Judgment.

**H.   A list of Each Discovery Item and Trial Deposition**

1. Olson Deposition Transcript, at pages 30-57

2. Wiley Deposition Transcript, at pages 10-47

**I.   Estimated Trial Time and Scheduling Issues**

1.  The parties anticipate the trial should take one day

2.  Plaintiff is unable to attend the trial on March 2-3 due to a previously scheduled trial in Delaware County.

3.  Plaintiff Wiley is traveling to the trial from Costa Rica and requires some advanced notice so that he can book travel arrangements.

**J.   Certification**

The parties certify that they have attempted in good faith to resolve this matter without success.

Respectfully submitted,

BERGER LAW GROUP, PC

Dated: 2/4/23    By: /s/ Phillip D. Berger
Phillip D. Berger, Esquire
919 Conestoga Road, Building 3, Suite 114
Rosemont, PA 19010
(610) 668-0800
Berger@BergerLawPC.com
Attorneys for the Plaintiff Michael Wiley

11

Dated: 2/4/23     By: /s/ Mark A. Cronin
                  Mark A. Cronin, Esquire
                  26 S. Church Street
                  West Chester, PA 19382
                  (484) 266-0832
                  philalaw@aol.com
                  Attorneys for the Defendant Patrick Olson

Case 22-00058-mdc    Doc 32    Filed 02/04/23    Entered 02/04/23 12:46:01    Desc Main
Document      Page 12 of 12